ATTORNEY GENERAL LOVING HAS ASKED ME TO RESPOND TO YOUR REQUEST ADDRESSING THE FOLLOWING QUESTIONS:
 1. DO THE EXEMPTIONS TO THE DEALER AGREEMENT RESTRICTIONS SET OUT IN 63 O.S. 4037(B)(2) APPLY TO OUTBOARD MOTORS?
 2. IS SUCH A RESTRICTION CONSTITUTIONAL UNDER THE STATE AND FEDERAL CONSTITUTIONS, AND IS IT LAWFUL FOR THE STATE TO ENACT LEGISLATION TO RESTRICT DEALERSHIPS WHICH IS MORE RESTRICTIVE THAN THE INDIVIDUAL MANUFACTURER'S POLICY?
SINCE THESE QUESTIONS MAY BE ANSWERED BY REFERENCE TO CLEARLY CONTROLLING STATUTES AND CASE LAW, THIS OFFICE FELT THAT THE ISSUANCE OF AN INFORMAL OPINION LETTER WOULD BE APPROPRIATE. THE DISCUSSION WHICH FOLLOWS IS, THEREFORE, THE ANALYSIS AND CONCLUSIONS OF THE UNDERSIGNED ASSISTANT ATTORNEY GENERAL, AND NOT A FORMAL OPINION OF THE ATTORNEY GENERAL.
TO LOGICALLY ADDRESS THE QUESTIONS POSED ABOVE, WE SHOULD FIRST ANSWER THE SECOND QUESTION. TITLE 63 O.S. 4001 (1990) ET SEQ. IS THE OKLAHOMA VESSEL AND MOTOR REGISTRATION ACT (THE "ACT"). IN GENERAL, IT REGULATES THE SALE OF NEW AND USED BOATS AND BOAT MOTORS IN THE STATE OF OKLAHOMA. SECTION 4004 OF THE ACT EMPOWERS THE OKLAHOMA TAX COMMISSION TO ADMINISTER THE ACT, INCLUDING GRANTING LICENSES FOR DEALERSHIPS.
THE STATE POWER TO REGULATE AND CONTROL PRIVATE BUSINESS STEMS FROM THE POLICE POWER GRANTED BY THE STATE AND FEDERAL CONSTITUTIONS. THE OKLAHOMA SUPREME COURT HAS CONSTITUTIONALLY CONSTRUED ACTS CONTROLLING AND REGULATING MANY BUSINESSES OR OCCUPATIONS, INCLUDING THE FOLLOWING: DAIRY INDUSTRY (GATES V. EASTER, 354 P.2D 438 (OKLA. 1960)); RETAIL SALE OF GASOLINE (GLENN SMITH OIL CO. V. SHEETS, 704 P.2D 474 (1985)); GENERATION AND SALE OF ELECTRICITY (STATE V. OKLAHOMA GAS ELEC. CO., 536 P.2D 887 (1975)); SALE OF ALCOHOL (ADOLPH COORS CO. V. OKLAHOMA ALCOHOLIC BEVERAGE CONTROL BD., 584 P.2D 717 (1978)); OIL GAS INDUSTRY (WICKHAM V. GULF OIL CORP., 623 P.2D 613 (1981)); AND, SALE OF NEW MOTOR VEHICLES (SEMKE V. STATE EX REL. OKLA. MOTOR VEHICLE COMM., 465 P.2D 441 (1970)).
IN A CASE CONSTRUING THE CONSTITUTIONALITY OF THE LAWS REGULATING THE SALE OF NEW MOTOR VEHICLES (47 O.S. 561 — 47 O.S. 568 (1961)), THE OKLAHOMA SUPREME COURT STATED THAT:
 "THE RIGHT OF THE LEGISLATURE TO REGULATE OCCUPATIONS AND PROFESSIONS FOR THE PROTECTION OF THE LIVES, HEALTH, SAFETY AND WELFARE OF ITS PEOPLE IS UNQUESTIONED. THE LEGISLATURE MAY, IN THE PROPER EXERCISE OF THE POLICE POWER, DEFINE AND DECLARE WHAT IS DEEMED INJURIOUS TO PUBLIC HEALTH, MORALS, SAFETY AND GENERAL WELFARE. WE HAVE SAID THAT THE POLICE POWER OF THE STATE TO REGULATE A BUSINESS AFFECTED WITH A PUBLIC INTEREST IS A FUNCTION. OF THE STATE LEGISLATURE, AND EVERY POSSIBLE PRESUMPTION IS TO BE INDULGED IN FAVOR OF THE CORRECTNESS OF ITS FINDING. (CITATIONS OMITTED)."
SEMKE V. STATE EX REL. OKLA. MOTOR VEHICLE COMM., 465 P.2D 441, 445 (1970). IN THE SEMKE CASE, THE SUPREME COURT UPHELD THE ACT IN QUESTION, SPECIFICALLY HOLDING THAT THE REGULATION OF NEW CAR SALES IS A PROPER FUNCTION OF THE LEGISLATURE.
ALTHOUGH THE SUPREME COURT HAS NOT HAD THE OPPORTUNITY TO CONSTITUTIONALLY CONSTRUE THE ACT INVOLVED IN THIS OPINION LETTER, IT APPEARS TO MEET THE SAME GENERAL CRITERIA FOR CONSTITUTIONALITY AS SET OUT IN SEMKE. THE COURT IN THAT CASE LOOKED TO SUCH FACTORS AS: (1) EFFECT ON THE ECONOMY OF THE BUSINESS IN QUESTION, (2) THE PUBLIC INTEREST IN THE BUSINESS, (3) IMPORTANCE TO THE HEALTH, SAFETY AND WELFARE OF THE CITIZENS, (4) THE NEED TO PROTECT THE INVESTMENTS AND PROPERTIES OF THE CITIZENS, AND TO PREVENT FRAUD, IMPOSITION AND OTHER ABUSES. SEE, SEMKE, 465 P.2D AT 445-446. IN LIGHT OF THESE FACTORS AS THEY APPLY TO THE ACT IN QUESTION, AND KEEPING IN MIND THE LANGUAGE OF THE SUPREME COURT QUOTED ABOVE, IT IS THE OPINION OF THE UNDERSIGNED THAT THE OKLAHOMA VESSEL AND MOTOR REGISTRATION ACT AND ITS PROVISIONS ARE A VALID AND PROPER EXERCISE OF THE POLICE POWER OF THE STATE LEGISLATURE, UNDER THE STATE AND FEDERAL CONSTITUTIONS AND APPLICABLE LAWS.
LOOKING TO THE SECTION OF THE ACT REGARDING DEALERS (63 O.S. 4033 — 63 O.S. 4044 (1981)), WE CAN ANSWER THE FIRST QUESTION POSED ABOVE. 63 O.S. 4037 SPECIFICALLY EXEMPTS DEALER AGREEMENTS RELATING TO INBOARD AND INBOARD/OUTBOARD MOTORS. 63 O.S. 4037(B)(2) (1990). BECAUSE THE ONLY TYPES OF MOTORS DEFINED AND DISCUSSED IN THE ACT ARE INBOARD, INBOARD/OUTBOARD, AND OUTBOARD MOTORS, IT IS CLEAR THAT THE EXCLUSION OF TWO OF THESE TYPES LEAVES THE THIRD. IT IS MY OPINION THAT 63 O.S. 4037 DOES APPLY TO DEALER AGREEMENTS RELATING TO THE SALE OF VESSELS AND OUTBOARD MOTORS, AS DEFINED IN THE ACT. SEE, 63 O.S. 4002 (1990).
63 O.S. 4033 SETS OUT THE REQUIREMENTS AND PROCEDURES TO BE USED BY THE TAX COMMISSION IN GRANTING DEALER LICENSES, ONE OF WHICH IS THE NECESSITY OF HAVING A DEALER AGREEMENT. 63 O.S. 4033(B)(2) (1990). A DEALER AGREEMENT IS DEFINED IN THE ACT AS: "THE AGREEMENT, AUTHORIZATION OR CONTRACT BETWEEN A MANUFACTURER AND DISTRIBUTOR AND A NEW VESSEL DEALER WHICH PURPORTS TO ESTABLISH THE LEGAL RIGHTS AND OBLIGATIONS OF THE PARTIES TO THE AGREEMENT, AUTHORIZATION OR CONTRACT WITH REGARD TO THE PURCHASE AND SALE OF NEW VESSELS OR NEW MOTORS." 63 O.S. 4002(4).
63 O.S. 4037 OUTLINES THE SUBJECTS COVERED BY AND RESTRICTIONS IMPOSED ON DEALER AGREEMENTS UNDER THE ACT. 63 O.S. 4037(B) (1990). PART (B) OF THIS SECTION IMPOSES A FIFTEEN (15) MILE RADIUS RESTRICTION FOR NEW DEALERSHIPS OF A SPECIFIC PRODUCT LINE AROUND AN EXISTING DEALER OF THE SAME PRODUCT LINE, REGARDLESS OF BRAND NAME. 63 O.S. 4037(B). AS I UNDERSTAND IT, THIS RESTRICTION IS THE CRUX OF YOUR INQUIRY. BASED ON THE ANALYSIS STATED ABOVE, IT IS MY OPINION THAT THIS RESTRICTION IS A VALID EXERCISE OF THE STATE'S POLICE POWER, ESPECIALLY IN LIGHT OF THE SECTIONS IMMEDIATELY FOLLOWING 4037, WHICH CONTAIN PROCEDURES FOR LOCATING A DEALERSHIP WITHIN THE 15-MILE RESTRICTED AREA.
63 O.S. 4037.1 SETS OUT THE MEANS BY WHICH A PERSON CAN APPLY WITH THE TAX COMMISSION TO ESTABLISH A NEW DEALERSHIP FOR A PRODUCT LINE WITHIN 15 MILES OF AN EXISTING DEALERSHIP OF THAT PRODUCT LINE. 63 O.S. 4037.1. 63 O.S. 4037.2 LISTS THE CIRCUMSTANCES TO BE CONSIDERED IN DETERMINING WHETHER SUCH NEW DEALERSHIPS SHALL BE ALLOWED. 63 O.S. 4037.2. I HAVE ATTACHED A COPY OF THESE TWO SECTIONS TO THIS LETTER, FOR YOUR CONVENIENCE.
BRIEFLY, THE PROCEDURE SET OUT IN 63 O.S. 4037.1 CALLS FOR THE PROSPECTIVE DEALER/APPLICANT TO NOTIFY THE TAX COMMISSION AND ALL DEALERS OF THE SAME PRODUCT LINE WITHIN A 15 MILE RADIUS OF THE PROPOSED LOCATION OF THE INTENTION TO ESTABLISH A DEALERSHIP. THE OTHER DEALERS THEN HAVE 15 DAYS IN WHICH TO FILE A PROTEST WITH THE TAX COMMISSION. IF A PROTEST IS FILED, THE TAX COMMISSION WILL NOTIFY THE PROSPECTIVE DEALER/APPLICANT THAT A PROTEST HAS BEEN FILED, AND SET A HEARING FOR THE APPLICATION, IF REQUIRED. THE PROSPECTIVE DEALER/APPLICANT MAY NOT THEN COMMENCE THE ESTABLISHMENT OF THE NEW DEALERSHIP UNTIL A FAVORABLE RULING IS OBTAINED FROM THE TAX COMMISSION.
THE MANUFACTURER MAY OBTAIN A WAIVER OF PROTEST FROM THE OTHER EFFECTED DEALERS, WHICH MAY BE PRESENTED ALONG WITH THE APPLICATION TO ESTABLISH A NEW DEALERSHIP. IF THIS IS NOT DONE, THE TAX COMMISSION WILL MAKE A FINAL DECISION ON THE APPLICATION WITHIN 60 DAYS OF THE PROTEST, TAKING INTO CONSIDERATION THE FACTORS LISTED IN 63 O.S. 4037.2. THESE PROVISIONS PROVIDE A PROSPECTIVE DEALER/APPLICANT THE OPPORTUNITY TO WORK WITH THE PRODUCT LINE MANUFACTURER AND THE OTHER DEALERS IN THE RELEVANT MARKET AREA (15 MILE RADIUS) TO AGREEABLY ESTABLISH A NEW DEALERSHIP OR ADD THE PRODUCT LINE TO AN EXISTING ONE. THE APPLICATION OF THESE SECTIONS SHOULD ALLEVIATE THE HARSH EFFECT OF THE STRICT 15 MILE RADIUS RESTRICTION IN MANY CASES, AND STRENGTHEN THE ARGUMENT IN FAVOR OF THE CONSTITUTIONALITY AND VALIDITY OF THE ACT AS A WHOLE.
(KAREN L. COLLIER)